## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                    *Plaintiff*,

v.                                                              Case No. 21-cr-10018-EFM
                                                                         23-cv-01108-EFM

NANCY MARTIN,

                    *Defendant*.

## MEMORANDUM AND ORDER

Before the Court is Defendant Nancy Martin's Motion to Vacate her sentence under 28 U.S.C. § 2255 (Doc. 188).  Having previously entered a guilty plea on counts for bank fraud and tax fraud, Defendant now claims her counsel's ineffective assistance resulted in her plea being involuntary and unknowing.  In her Motion, Defendant raises five separate claims for relief.  None, however, possess any merit.  Therefore, the Court denies Defendant's Motion in its entirety.

### I.        Factual and Procedural Background

Beginning in 2005, Defendant embezzled millions of dollars from her employers, Emergency Services, P.A., ("ESPA") and Mid-Kansas Wound Specialists ("MKWS").  Working as the bookkeeper, business manager, and chief operating officer, Defendant regularly wrote checks from her employers' bank accounts to cover her personal expenses.  Defendant also created false entries in the accounting books so that her employers would not discover that she had converted their monies for her own use.  After her employers received an IRS audit letter, Defendant began making partial repayments of the stolen funds and eventually confessed her

crimes to her employers.  Throughout this period, Defendant did not mention any of the stolen funds as income on her tax returns.

On March 31, 2021, Defendant was indicted on five counts. Count I alleged bank fraud under 18 U.S.C. § 1344(2), while Counts II–V alleged multiple instances of tax fraud under 26 U.S.C. § 7206(2).  Because 18 U.S.C. § 1344(2) carries a maximum sentence of 30 years, it qualifies as a Class B Felony, making Defendant ineligible for a sentence of probation.[1]  Facing these charges, Defendant hired Sylvia B. Penner as her defense counsel.  After filing multiple motions for continuance of trial, Defendant decided to take a plea deal over a year after her indictment.  In exchange for pleading guilty to Counts I and IV, the Government agreed to: (1) drop Counts II, III, and V; (2) recommend a sentence at the lowest end of the sentencing guidelines; (3) allow Defendant to request a downward variance; and (4) recommend a three-level deduction to her offense level based on her acceptance of responsibility and the plea deal.  Additionally, Defendant waived her right to appeal her conviction or her sentence.

The plea agreement only mentioned the amounts Defendants embezzled between 2012 and 2017, listing the total amount as $3,196.481.88.  It also stated that "[D]efendant understands that the sentence to be imposed will be determined solely by the United States District Judge.  The United States cannot and has not made any promise or representation as to what sentence she will receive."

The change of plea hearing occurred before Magistrate Judge Kenneth G. Gale on May 24, 2022.  At the hearing, Defendant stated that she understood she was ineligible for probation because bank fraud was a Class B felony.  She also stated that she understood that neither Penner's estimates nor the Government's promises were binding upon the Court when it came time for

---

[1] *See* 18 U.S.C. §§ 3559(a)(2), 3561(a)(1).

sentencing.   Finally, she acknowledged that the Court could consider "all relevant criminal conduct, including counts to which you did not plead guilty or were even charged with and, thus, have not been convicted."

While asking Defendant about the factual basis for her entering a plea, the Court inquired:

The Court: Would it be fair to say that at the time that you were doing the things that resulted in the charges, that you realized at that time that what you were doing was illegal?

The Defendant: Uh, yes.

The Court: Okay.

Ms. Penner: Are you sure?

The Defendant: My concern is the memory issue, I mean at the time I did it, I didn't know it was illegal but I can't be misleading, I mean . . . It's the way it is.

Upon the Court asking Penner if Defendant's comments raised any concerns, Penner replied: "I probably need to talk to her, if the Court is wanting her to make an admission that in the moment of the act she had an awareness that conduct was unlawful."   Penner then took Defendant into the hall for a private discussion.   Before they left, however, the Government indicated that it did not believe that it had to prove that Defendant knew her conduct was illegal. Penner verbally agreed.

When Defendant and Penner returned, they agreed that the factual basis laid out in the plea agreement sufficiently established the mens rea component for her charged crimes.   Although the factual basis stated that Defendant "willfully failed to report her income," it did not specify that she knew by doing so that she was breaking the relevant law.   Ultimately, Judge Gale found that Defendant knowingly and voluntarily entered a guilty plea, that her guilty plea was not the result of any promises except those specifically set forth in the plea agreement, and that a factual basis existed for the plea.

Prior to sentencing, the Presentence Investigation Report ("PSI") calculated the total amount embezzled by Defendant to be $5,472,967.41. It reached this figure by considering all the funds Defendant had stolen, not just those from 2012 to 2017. Because the total was more than $3,500,000, Defendant's base offense level on Count I was increased by 18 points—not 16 points as Penner had originally assumed based on the figure in the plea agreement.[2] Her total offense level for Count I was 29, which was then reduced by three points for her acceptance of responsibility and decision to enter a guilty plea. Based on an offense level of 26 and a criminal history category I, Defendant's guideline imprisonment range on Count I was 63 to 78 months.

On March 2, 2023, the Court held a sentencing hearing for Defendant. Despite her client's ineligibility, Penner asked for a downward variance from the sentencing guidelines to a sentence of probation. Ultimately, the Court sentenced Defendant to 48 months imprisonment with 2 years of supervised release on Count I, and 36 months imprisonment with one-year of supervised release on Count IV, with each sentence to run concurrently. In giving its reasons for the downward variance, the Court credited Defendant's age, failing health, and her acceptance of responsibility. In addition to the custody sentence, the Court imposed a $200 assessment fee and $3,898,088.61 in restitution for both counts.

Despite waiving her right to appeal, Defendant appealed her conviction and sentence to the Tenth Circuit. The Tenth Circuit quickly concluded that Defendant's waiver prevented it from hearing her appeal.[3] This was because Defendant "failed to meet her burden of showing that her waiver was not knowing and voluntary."[4] Approvingly, it also noted that "the district court

---

[2] *See* U.S.S.G. § 2B1.1(b)(1)(I)–(J).

[3] *See United States v. Martin*, 2023 WL 4858015, at *3–4 (10th Cir. July 31, 2023).

[4] *Id.* at *3.

satisfied the requirement that it determine that there was a factual basis for the plea."[5]  Having

been denied at the circuit level, Defendant unsuccessfully petitioned for a writ of certiorari.[6]

Still unsatisfied, Defendant now moves to vacate her sentence based on the alleged

ineffective assistance of counsel provided by Penner.  In response, the Government attached an

affidavit from Penner stating, among other things, that: (1) Defendant prepared the personal tax

returns for herself and her husband; (2) she had been a bookkeeper; (3) she handled the finances

for her and her husband; (4) she maintained their tax documents and assembled everything for the

accountant; and (5) she prepared the documents in such a way that kept her husband and the CPA

from knowing about the unauthorized funds she was taking from her employer and did so for

years.[7]  This matter has been fully briefed and is now ripe for ruling.

## II.    Legal Standards

### A.    Motions to vacate

Under 28 U.S.C. § 2255(a),

A prisoner in custody under sentence of a court established by Act of Congress
claiming the right to be released upon the ground that the sentence was imposed in
violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate, set aside or correct the
sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United

States District Courts,

The judge who receives the motion must promptly examine it.  If it plainly appears
from the motion, any attached exhibits, and the record of prior proceedings that the
moving party is not entitled to relief, the judge must dismiss the motion . . . .  If the

---

[5] *Id.*

[6] *See Martin v. United States*, --- S. Ct. ----, 2024 WL 3089554 (U.S. June 24, 2024).

[7] This information was also included in the PSI prepared in this case.

motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[8]  The petitioner must allege facts that, if proven, would warrant relief from her conviction or sentence.[9]  An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[10]

**B.    Ineffective assistance of counsel**

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when [s]he enters a guilty plea."[11]   In *Strickland v. Washington*,[12] the Supreme Court has created a two-prong test which a criminal defendant must meet to prevail on a claim for ineffective assistance of counsel.[13]   Under this test, "a petitioner must show: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial."[14]  Because the petitioner must meet both prongs

---

[8] 28 U.S.C. § 2255(b).

[9] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[10] *See id*. at 1472 (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

[11] *Lee v. United States*, 582 U.S. 357, --- (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)).

[12] 466 U.S. 668 (1984).

[13] *See id.* at 687–88.

[14] *United States v. McPherson*, 2022 WL 1044922, at *3 (D. Kan. 2022) (citing *Strickland*, 466 U.S. at 687–88).

of the test, "[a]n ineffective assistance claim may be resolved on either performance or prejudice grounds alone."[15]

Prevailing on the first prong requires the petitioner to show that her counsel's performance fell "outside the wide range of professionally competent assistance."[16]  This is a "highly demanding" standard.[17]  The petitioner must show that her counsel's "strategic decisions must have been completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[18]  In assessing counsel's performance, courts must exercise a high level of deference because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[19]  Furthermore, to avoid "the distorting effects of hindsight,"[20] courts must evaluate the decision from "counsel's perspective at the time of the alleged error."[21]

To prevail on the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[22]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[23]  As explained by the Supreme Court, "[t]he likelihood of a different result must

---

[15] *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000); *see also McPherson*, 2022 WL 1044922, at *3 ("A failure to prove one of the *Strickland* prongs is dispositive to a petitioner's claim, and a court may dispose of either the first or second prong, whichever is easier to resolve.").

[16] *Strickland*, 466 U.S. at 690.

[17] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[18] *Fox*, 200 F.3d at 1296 (further citations and quotations omitted).

[19] *Strickland*, 466 U.S. at 690.

[20] *Id.* at 689.

[21] *McPherson*, 2022 WL 1044922, at *3 (citing *Edens v. Hannigan*, 7 F.3d 1109, 1114 (10th Cir. 1996)).

[22] *Strickland*, 466 U.S. at 694.

[23] *Id.*

be substantial, not just conceivable."[24]  The main inquiry here is "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[25]

In the plea agreement context, the main inquiry is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process."[26]  Under Tenth Circuit precedent, this entails a two-part inquiry.[27]  The defendant must first establish that going to trial would have been objectively "*rational* under the circumstances."[28]  If the defendant succeeds, then the court must examine "the factual circumstances surrounding the plea, to determine if there is a reasonable probability the defendant would have accepted the plea deal."[29]  Naturally, this is a subjective inquiry as to "whether *the defendant* would have changed his plea."[30]  But "bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors" are entitled to little weight.[31]  Thus, "the inquiry will focus on the objective evidence."[32]

### III.    Analysis

Defendant asserts five different theories or claims as to how her previous counsel, Penner, violated the Sixth Amendment by providing ineffective assistance of counsel.  First, she claims Penner failed to advise her that to be guilty of bank fraud under 18 U.S.C. § 1344(2), the Government had to prove that she used a false statement to obtain bank property.  Second, Defendant argues that Penner failed to advise her that, with respect to the tax fraud claims, the

---

[24] *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

[25] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citation omitted).

[26] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[27] *See Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013).

[28] *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

[29] *United States v. Kearn*, 90 F.4th 1301, 1306 (10th Cir. 2024) (further citation and quotations omitted).

[30] *United States v. Oviedo-Tagle*, 657 F. App'x 803, 806 (10th Cir. 2016) (quoting *Heard*, 728 F.3d at 1184).

[31] *Heard*, 728 F.3d at 1184.

[32] *Id.*

Government had to prove Defendant knew she was breaking the law when failing to report the stolen money on her tax forms.  Third, Defendant asserts that her counsel inaccurately informed her that the Court could impose a sentence of probation.  And in a two-part finale, Defendant claims that Penner failed to reasonably investigate the restitution amount, which improperly increased Defendant's sentence as well as the amount of restitution she had to pay.  Because of Penner's allegedly ineffective performance in these areas, Defendant claims her guilty plea was neither knowing nor voluntary. The Court will address each argument in turn.

**A.      False statement under Count I**

Defendant first claims that Penner provided ineffective counsel as to the elements of Count I.  According to Defendant, Penner failed to advise her that to be guilty of bank fraud under 18 U.S.C. § 1344(2), the Government had to prove that she used a false statement to obtain bank property.

Defendant points to the language of § 1344(2), which requires that the defendant obtain bank property "by means of false or fraudulent pretenses, representations, or promises."  Citing *Loughrin v. United States*,[33] Defendant accurately states that "Section 1344(2)'s 'by means of' language is satisfied when . . . the defendant's false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control."[34]  From that language, Defendant infers that the only way she could have been convicted under § 1344(2) is if she had used a *forged* check to obtain the bank's money.

Here, it is undisputed that Defendant had authority to write and sign checks on behalf of ESPA and MKWS to pay business expenses.  Furthermore, there were no allegations or evidence

---

[33] 573 U.S. 351 (2014).

[34] *Id.* at 363.

that Defendant used forged checks to embezzle funds from her employers.  Because she had the authority to write checks that were themselves legally sound, Defendant claims that paying her personal expenses with those checks does not constitute a false statement or representation.

However, Defendant's reading of *Loughrin* is overbroad.  Importantly, *Loughrin* did not address what constitutes a "false statement" under § 1344(2) except in a passing hypothetical.  Rather, *Loughrin* advises that ordinary fraud "where no false statement will ever go to a financial institution" does not satisfy the "means" requirement in § 1344(2).[35]  The Supreme Court clarified that "[l]anguage like 'by means of' is inherently elastic.  It does not mean one thing as to all fact patterns."[36]  But the reach of § 1344(2) will cover all "frauds in which a false statement will naturally reach such a bank (or a custodian of the bank's property)."[37]

For its part, the Tenth Circuit has repeatedly held that falsely holding oneself out as having authority to deposit a business's checks into one's personal account constitutes a false statement sufficient for conviction under § 1344(2).[38]  The Supreme Court's holding in *Loughrin* does nothing to rebut the Tenth Circuit's prior rulings.  Instead, it is clear that the false assertion of authority presented to the bank categorically fits under *Loughrin*'s definition of "by means of."

---

[35] *Id.* at 364–65 (describing the classic "handbag swindle," where a seller fraudulent advertises a knock-off as a name brand and cashes the check from the sale with a bank)

[36] *Id.* at 365 n.8.

[37] *Id.*

[38] *See United States v. Young*, 952 F.2d 1252, 1257 (10th Cir. 1991) (finding § 1344(2) satisfied when defendant "misrepresented to the bank she had authority to deposit the checks"); *United States v. McDonald*, 209 F. App'x 748, 751 (10th Cir. 2006) ("McDonald made implicit false misrepresentations to MACU that she had authority to deposit the two cashier's checks into her personal bank account, which was critical to completing her fraudulent plan. These misrepresentations constitute sufficient evidence of McDonald's intent to defraud MACU."); *United States v. Kain*, 149 F.3d 1192 (table), 1998 WL 327865, at *2 (10th Cir.1998) ("This circuit has concluded that a defendant's misrepresentation to a bank that he or she is authorized to engage in a particular transaction may constitute a violation of § 1344(2).  Depositing a check that is known to contain a forged endorsement may constitute a misrepresentation sufficient to support a bank fraud conviction under § 1344(2)." (citation omitted)).

By writing checks from her employers to pay her personal expenses, Defendant falsely represented to the banks that she had authority to make those payments.  Under Tenth Circuit precedent and *Loughrin*, Defendant's conduct constitutes a false statement sufficient for conviction under § 1344(2).  Therefore, Penner did not provide ineffective assistance by advising Defendant that she committed bank fraud by means of a false statement.  Accordingly, Defendant's first argument fails to meet *Strickland*'s first prong.

**B.     Knowledge of violating the law under Count IV**

Defendant next attacks Count IV, violation of 26 U.S.C. § 7206(2) by aiding or assisting the filing of a false tax document.  She claims that Penner failed to advise her that the Government would have to prove her subjective knowledge that she was violating the law.  The law is clear that conviction for tax fraud requires the Government to prove "specific intent to violate the law."[39] However, the record indicates that attorneys for both the Government and Defendant believed that all the law required was that Defendant committed the acts intentionally without necessarily knowing that her acts were illegal.

Upon the Court asking Penner if Defendant's comments raised any concerns, Penner replied: "I probably need to talk to her, if the Court is wanting her to make an admission that in the moment of the act she had an awareness that conduct was unlawful."  This statement certainly indicates that Penner had not advised her client at that time that the Government had to prove her subjective intent to violate the law in order to be convicted of tax fraud.  Further discussion by the parties focused on whether Defendant intentionally signed the checks—not on whether Defendant subjectively knew her conduct was illegal.  In fact, the Government's attorney explicitly stated he

---

[39] *United States v. Blackstock*, 245 F. App'x 746, 750 (10th Cir. 2007) (quoting *Cheek v. United States*, 498 U.S. 192, 200 (1991)).

did not believe that language was necessary, a statement with which Penner agreed.  Given that the law requires otherwise, Penner's failure to advise Defendant as to the necessary elements of conviction under 26 U.S.C. § 7206(2) was not a reasonable strategic decision.   Therefore, Defendant has satisfied *Strickland*'s first prong.

Defendant, however, fails to prove any prejudice.  With broad, conclusory language, Defendant argues that the Government could not have proven Count IV at trial.  In making this argument, Defendant emphasizes that she must have had knowledge of the specific law she was accused of violating.  While true, Defendant mischaracterizes the legal test.  To meet its burden, the Government must have overcome *Defendant's assertion* that she had a "good faith belief that [s]he was not violating any provisions of the tax laws."[40]  The problem with Defendant's argument is that she has not asserted and cannot articulate how she had a good faith belief that she was not violating the law by willfully failing to report her income.

Violating § 7206(2) does not require some mystical legal knowledge entrusted only to a learned few.  All Defendant must have known is that she was required to report her income—including unlawful income—on her tax return.[41]  Even though a specific admission to that point is not before the Court, there is no dispute that: (1) Defendant prepared the personal tax returns for herself and her husband; (2) she had been a bookkeeper; (3) she handled the finances for her and her husband; (4) she maintained their tax documents and assembled everything for the accountant; and (5) she prepared the documents in such a way that kept her husband and the CPA from knowing about the unauthorized funds she was taking from her employer and did so for years.

---

[40] *United States v. Lesoon*, 190 F. App'x 622, 625 (10th Cir. 2006) (quoting *Cheek*, 498 U.S. at, 202 (1991)).

[41] *See Cheek*, 498 U.S. at 202.

By themselves, each of these facts would likely lead a jury to find that Defendant knew of her obligation to report her income. Together, they comprise overwhelming evidence of that fact. The Court is mindful that whether a defendant possessed a good faith belief is a question that goes beyond "reasonableness" and exists squarely within the province of the jury.[42] At this stage, however, Defendant's Motion requires the Court to examine the rationality of going to trial under the circumstances, including the odds of a jury crediting Defendant's alleged "good faith belief." Considering Defendant's willful failure to report her stolen income—a fact not in dispute—and her apparent knowledge of her duty to report her income, it is highly likely a jury would conclude that Defendant willfully violated § 7206(2). Defendant's argument that Count IV lacked any factual basis is indefensible. Thus, Defendant's present assertion that she would have gone to trial had she been advised of the Government's legal burden lacks any rational basis.

Not only would a rational defendant have little (if anything) to gain at trial, but she would have lost several benefits of pleading guilty in this case. Had Defendant gone to trial in order to contest her intent to violate 26 U.S.C. § 7206(2), then she would be ineligible for the two-point reduction under U.S.S.G. § 3E1.1(a) to her sentencing score.[43] She would also have lost the one-point reduction for accepting a change of plea under U.S.S.G. § 3E1.1(b). Had she gone to trial and been found guilty, her guideline sentence would have been 87–108 months incarceration. By pleading guilty, she lowered that guideline sentence to 63–78 months.

Not only did she receive the reduction in her guidelines range, but the Court also credited her acceptance in responsibility as one of the factors warranting a downward variance from the guidelines range to merely 48 months. Obviously, the Court would not have done so if Defendant

---

[42] *See id.* at 203 ("[I]t is not contrary to common sense, let alone impossible, for a defendant to be ignorant of [her] duty based on an irrational belief that [s]he has no duty.").

[43] *See* 18 U.S.C. §§ 3559(a)(2), 3561(a)(1).

had not accepted responsibility.  In total, Defendant saved herself from potentially five years imprisonment by pleading guilty to two of the five counts.

Defendant briefly argues that because she is a "78-year-old woman in poor health . . . [a]ny term of incarceration—whether 48 months, 63 months, or 108 months—is likely to equal a life sentence for her."  Defendant's advanced age and poor health, however, underscore the importance for a rational person in her position to spend minimal time in prison. This favors finding that a rational defendant would not have gone to trial under these circumstances.

Finally, Defendant summarily argues that she suffered prejudice by giving up her rights to appeal because "[e]ven if her legal arguments had floundered in the district court, she would have reserved her right to appeal those arguments."  But she fails to show, argue, or even speculate as to how the possibility of raising ineffectual arguments before an appellate court would persuade a rational defendant to go to trial.

No rational defendant in Defendant's position would have forfeited the benefits of the plea bargain and proceeded to trial.  Furthermore, the Court cannot conclude that Defendant herself would have chosen to go to trial under these circumstances.  Defendant points solely to her own bald, post hoc statements in arguing that she would have refused the plea had she known of the proper legal standard for violating § 7206(2).  However, the Court must consider the objective evidence regarding the circumstances surrounding her plea deal.  Just as with Defendant's other claims, no objective evidence supports finding that Defendant, having been properly advised of the legal standard for knowledge of violating § 7206(2), would have forfeited the benefits of a plea bargain.  Therefore, Defendant cannot establish a reasonable probability that, but for Penner's errors, she would not have pleaded guilty and would have insisted on going to trial.

### C.   Defendant's ineligibility for probation

Defendant next argues that Penner unreasonably advised her that she was eligible for a probation-only sentence.  Because bank fraud qualifies as a Class B felony, Defendant was ineligible for probation as a matter of law.[44]  Therefore, Penner's advice to her client was legally incorrect and unreasonable.

Even though Penner's use of the term "probation" was incorrect, Defendant cannot contend that she was prejudiced thereby.  The Court cannot conclude that a rational defendant would have rejected the benefits of the plea agreement and gone to trial in these circumstances.  Here, Defendant remained eligible for a noncustodial sentence.[45]  The likelihood of such a sentence was negligible, as Defendant rightly points out in her Motion.  What she fails to realize is that—given Defendant's astonishingly brazen criminal activity—a sentence of probation would be just as unlikely, even if permissible.  Only irrational thinking could have led someone under the circumstances to enter a plea because she firmly believed she would receive either probation or a noncustodial sentence.  Therefore, the Court cannot find prejudice based solely on Defendant's bald, post hoc statements that she would have gone to trial had Penner used the term "noncustodial sentence" instead of "probation."

As to Defendant herself, Judge Gale specifically asked Defendant at the change of plea hearing if she understood that she was not eligible for probation.  She answered yes and decided to plead guilty anyway.  Defendant's "sworn testimony at [her] plea hearing established that [s]he knowingly and voluntarily entered a guilty plea, a 'formidable barrier in any subsequent collateral

---

[44] *See* 18 U.S.C. §§ 3559(a)(2), 3561(a)(1).

[45] *See* 18 U.S.C. § 1344 (listing penalties as "$1,000,000 *or* imprisoned not more than 30 years, *or both*") (emphasis added); *see also United States v. Elliott*, 971 F.2d 620, 622 (10th Cir. 1992); *United States v. Griffin*, 2022 WL 4395719, at *2 (4th Cir. Sept. 23, 2022) (citing *Elliot* in context of 18 U.S.C. § 1344 conviction).

proceedings.'"[46] This objective evidence of Defendant's knowledge undercuts her present unsupported assertion that she would have rejected the plea agreement if Penner had advised her that she was ineligible for probation.  Accordingly, the Court finds that Defendant cannot prove prejudice for this claim.

### D.      Identification of proper restitution amount

In her fourth argument, Defendant spends much time asserting how Penner's conduct was unreasonable and deficient by failing to account for funds stolen before 2012.  Because Penner calculated that Defendant had stolen $3,196.481.88 between 2012 and 2017, she believed Defendant's base offense level would be increased by 16 levels—not 18, as it turned out.  Despite the factual error in Penner's calculations, Defendant fails to address the prejudice prong of *Strickland* beyond stating that she would have gone to trial had she been accurately informed of the base offense level.

Like Defendant's other arguments, nothing supports her position except her own post hoc statements.  At her plea hearing, Defendant stated under oath that she understood the Court may take into account *all* relevant conduct, not just the crimes charged, and that there was no guarantee that she would receive any sentence reduction benefit from pleading guilty.  This objective evidence—along with the benefits of the plea bargain and likely futility of trial—undercuts the credibility of Defendant's present assertion.  No rational defendant in these circumstances would have insisted on trial because of a mere two-level increase in her base offense level, particularly considering the Court's admonishment.  Accordingly, the Court finds that Defendant has failed to prove the prejudice prong on this claim.

---

[46] *Gordy v. Hargett*, 37 F. App'x 437, 439 (10th Cir. 2002) (quoting *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir.1995)) (further citation omitted).

## E.     Restitution order

Defendant's final claim is a nonstarter because she simply protests the amount of restitution imposed at her sentencing.  However, "a federal prisoner cannot challenge the restitution portion of [her] sentence using 28 U.S.C. § 2255, because the statute affords relief only to prisoners claiming a right to be released from custody."[47]  "It does not matter that the challenge to the restitution award is based on an ineffective-assistance claim."[48]  Because § 2255 is an improper vehicle for Defendant to argue the amount of restitution in this case, the Court declines to address her argument on that subject.

## IV.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner.  A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[49]  A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[50]  For the reasons

---

[47] *See United States v. Sorsby*, 2021 WL 4901655, at *3 (10th Cir. Oct. 21, 2021) (quoting *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003)); *see also United States v. Satterfield*, 218 F. App'x 794, 796 (10th Cir. 2007) (citing *Bernard* and concluding, "Mr. Satterfield cannot challenge the amount of restitution awarded by way of a § 2255 motion, however, because he is not 'claiming the right to be released' from custody based on his claim"); *Erlandson v. Northglenn Mun. Ct.*, 528 F.3d 785, 788 (10th Cir. 2008) ("[T]he payment of restitution or a fine, absent more, is not the sort of significant restraint on liberty contemplated in the custody requirement of the federal habeas statutes." (further citations and quotations omitted))

[48] *Sorsby*, 2021 WL 4901655, at *3.

[49] 28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA.  *See* 28 U.S.C. § 2253(c)(1).

[50] *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v Dretke*, 524 U.S. 274, 282 (2004)) (further quotations omitted).

explained above, Defendant has not made a substantial showing of the denial of a constitutional right.  Therefore, the Court denies a COA.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Vacate her sentence (Doc. 188) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 13th day of August, 2024.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE